## THE JAMES McWILLIAMS.

(Circuit Court of Appeals, Second Circuit. June 15, 1909.)

No. 266.

COLLISION (§ 66*)—VESSEL AT ANCHOR—DREDGE AT WORK.

A derrick, lawfully anchored about the middle of the East River while engaged in raising a sunken vessel, *held* entitled to recover damages from a tug whose tow came into collision with her, on the ground that it was the duty of the tug to use ordinary care and skill to avoid the derrick and that under the evidence she failed to do so.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 84; Dec. Dig. § 66.*]

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Action by the Merritt & Chapman Derrick & Wrecking Company, as owner of a derrick, against the steam tug James McWilliams for collision. Decree for libelant, and claimant appeals. Affirmed.

The following is the opinion of Adams, District Judge:

ADAMS, District Judge. The law in this case has been laid down in that of The Chauncey M. Depew, decided January 23, 1894, and reported in 59 Fed. 791. There it was held as follows (I read from the syllabus):

"1. Collision—Vessels at Anchor—Crowded Channel—Dredge Lawfully Moored. It is obligatory on their owners to raise, when practicable, vessels sunk in collision. Hence, a derrick anchored in the channel of the East River under a permit from the Secretary of the Treasury, occupied in raising a sunken vessel, and, though a partial obstruction to navigation, not such a complete obstruction, as to constitute a nuisance, was held not unlawfully anchored, though off the regular anchorage grounds, and not in fault for damage suffered by a vessel which collided with her.

"2. Same—Dredge Anchored in Narrow Channelway—Liability of Colliding Vessels. A derrick anchored in the crowded channelway of the East River engaged in raising a sunken vessel, although not unlawfully in such a position, was held not entitled to all the immunities of vessels anchored on anchorage grounds; and certain tugs which collided with her in spite of skill and diligence exercised by their pilots, were held not responsible for the damage to the derrick."

I had occasion to consider this method of anchoring vessels of the character involved in this case for the purpose of carrying on their work, in the case of the New England Transportation Company against the tug C. R. Stone, tried before me in December, 1906. As I recall the case, the vessels were moored under practically the same permit as that in this case. There the accident occurred in the channel between Blackwell's Island and New York. The tug was held in fault there for not having started soon enough to make the manœuver to cross from the port side of the Montauk to the starboard side, which was the side on which she should have passed, to accomplish the manœuver in safety. She was taking her tow along sidewise and it was because of that the collision happened. I do not think, however, that either of these cases covers this directly.

The facts here seem to be that this derrick took her position in the East River in pursuit of her lawful business and anchored properly at a point about the middle of the river. She was in that same position the morning of the day of the collision, but, as appears from the testimony, could only work during slack water, which varies from three quarters of an hour to an hour and a half. She had worked as long as she could in the morning and, not having finished, had resumed the work in which she was engaged, but was through with the work for that day at the time the collision occurred. While lawfully lying in that position this tug McWilliams with her tow came along and one of the barges ran into the derrick. The question here is whether the tug which was navigating the tow was in fault for the collision.

There have been numerous allegations of fault made here, but I think they can all be boiled right down into what is the substance of them, that is, that the collision occurred, because of the tug failing to avoid this anchored vessel, which it was obliged to do if it was practicable.

It is claimed that the tug did everything she could to avoid colliding with the derrick and was unable to do so on account of a schooner which came along behind her and so crowded her as to force her, not only to try to turn away from the derrick, but before she could reach that point in the navigation to turn towards it, to avoid the schooner. If that is so, if a clear case of such navigation has been made out, I think the tug should be exonerated, because she could not know that this sailing vessel was going to come up the river and force her out of her course. She was not obliged to keep a lookout astern. But some of the parties on that tow have said that the schooner was seen at least as far west as the Bridge and perhaps the westerly side of the

Bridge. The question really is whether that schooner was close enough to the tug or tow to require the tug to turn out of her course.

We do not get any aid on this point from the people on the derrick. They did not see the schooner. They say there was a clear course for the tug and tow. There is no doubt, however, in my mind that the schooner was there. The only doubt is whether she was navigating as close to the tug and tow as the claimants here would have the court believe. All those on the tug say explicitly that the schooner passed very close to them, as I remember they said about twenty-five feet.

When the men from the tow are put upon the witness stand we get an entirely different aspect of the case. They impressed me as being desirous of telling the truth. Of course we all understand that men on a tug are naturally interested in their own vessel and look at things in a way which will, if possible, exonerate her, without meaning to tell untruths. But these men from the tow had no such interest. Although their boats were identified in a certain way with the claimant of the tug yet they were free from that bias which our experience tells us always accompanies the crew of a tugboat which is implicated in such an accident as this.

Those two men from the tow say in substance, although not in so many words, that there was room enough for the tug to navigate there without regard to the schooner; in other words, that the schooner did not come so close as those on the tug would have us believe.

It was necessary, of course, to avoid the derrick, and ordinary care and skill were required on the part of the tug to accomplish that, and the absence of such ordinary care and skill would constitute what the law calls negligence in such matters; that is, it is negligence for one vessel to run into another by not observing all the precautions which the necessity of the case would ordinarily require.

It is my impression that the tug unnecessarily turned towards the New York shore; that is, that she turned before there was any real necessity for it, and that in that way she threw her tow somewhat across the channel and subjected it to the strong flood tide which prevailed there, and that when she tried to recover it was too late, she could not pull the tow away from the derrick. The consequence was this collision happened, with some damage to the derrick and no damage to the barge except some marks upon it, at any rate, nothing as far as appears here that required any money expenditure to repair it.

On such a state of facts it seems to me that the tug must be held in fault, because she was bound to keep her tow away from this lawfully anchored vessel, unless something occurred which she could not anticipate and could not avoid, as in the Luzerne Case (D. C.) 148 Fed. 133. There the Luzerne was navigating up the river and a sailing vessel came along and forced her over, not only by probability of collision but, as I remember the case, by actual collision which had the tendency to turn the Luzerne towards the injured tow, which was on the other side of her. I held there that the accident was inevitable. The Circuit Court of Appeals affirmed that decision (157 Fed. 391, 85 C. C. A. 328), although not on the ground of inevitable accident but because they said it should have been seen and avoided; that is, that the schooner should have seen what would happen by her sailing there; that it was a case of carelessness and negligence on her part. In this case I think it was negligence on the part of the tug. I cannot but believe that the tug could have passed that derrick, on the Brooklyn side of her and at the same time have avoided the schooner. That being so there is nothing for me to do but to hold the tug in fault. I therefore order decree against the tug with order of reference.

De Lagnel Berier, for appellant.

W. J. Martin, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. Decree affirmed, with interest and costs.